VINCENT MARTINEZ ,

        Petitioner,

    v.                           Case No. 18-cv-716-pp

WARDEN REED RICHARDSON,[1]

        Respondent.

---

**ORDER ADOPTING JUDGE DUFFIN'S REPORT AND RECOMMENDATION (DKT. NO. 20), GRANTING RESPONDENT'S MOTION TO DISMISS COUNTS THREE AND FOUR AND DENYING REPONDENT'S MOTION TO DISMISS COUNTS ONE AND TWO (DKT. NO. 14), GRANTING PETITIONER'S MOTION TO AMEND/CORRECT MOTION FOR APPOINTMENT OF COUNSEL (DKT. NO. 25), DENYING WITHOUT PREJUDICE PETITIONER'S MOTION TO APPOINT COUNSEL (DKT. NO. 23) AND SETTING BRIEFING SCHEDULE**

---

The petitioner, an inmate at Stanley Correctional Institution, filed a petition for writ of *habeas corpus* challenging his October 22, 2013, revocation of supervision. Dkt. No. 1. The respondent moved to dismiss the petition, and Magistrate Judge William E. Duffin issued a report recommending that this court deny the motion as to Grounds One and Two but grant it as to Grounds Three and Four. Dkt. No. 20. While the petitioner did not object to Judge

---

[1] The petitioner named the warden of Waupun Correctional Institution, Brian Foster, as the respondent in his petition. He recently has been transferred to Stanley Correctional Institution. https://appsdoc.wi.gov/lop/detail.do. Because Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts requires the petitioner to name as the respondent the state officer who has custody of him, the court has amended the caption of the case to name the warden at Stanley, Reed Richardson.

Duffin's recommendation, dkt. no. 22, the respondent objected to the recommendation that this court deny the motion as to Grounds One and Two, dkt. no. 21. The petitioner since has filed a motion to appoint counsel, dkt. no. 23, and a motion to amend/correct his motion to appoint counsel, dkt. no. 25.

## I.       **Background**

In February 2003, the petitioner pled guilty to a charge of aggravated battery-intended substantial injury in Washington County Circuit Court. Dkt. No. 1 at 2.  The judge sentenced the petitioner to three and a half years in prison, followed by ten years of extended supervision. Id. The petitioner says that he began serving the extended supervision portion of his sentence on January 26, 2010. Dkt. No. 5 at 1.

### A.       Revocation

In August of 2013, the Wisconsin Department of Corrections initiated proceedings to revoke the petitioner's supervision, alleging the following violations: (1) pursuing a relationship with K.V. without prior agent approval; (2) failing to provide true and correction information to his agent; (3) strangling K.V.; (4) beating K.V. to the point she received eleven stitches to her face; (5) consuming alcohol; (6) punching C.J.; (7) possessing a knife; and (8) calling K.V. thirty times. Dkt. No. 5-1 at 1. At the October 8, 2013 revocation hearing, the petitioner stipulated to the fifth violation, consuming alcohol. Dkt. no. 5-1 at 54. In his written statement, the petitioner denied all other allegations. Dkt. No. 18-1 at 6. He claimed he did not remember what happened, claimed that he was ambushed and said that he did not have a knife. Id. He said that he

was just friends with K.V. (although admitted that he wanted to date her). Id. He also denied hitting, punching or choking K.V. and said that K.V. told him she had fallen down the stairs. Id. at 7. The administrative law judge admitted this written statement into evidence as an exhibit at the revocation hearing. Dkt. No. 5-1 at 54-55.

On October 22, 2013, the administrative law judge revoked the petitioner's extended supervision. Id. at 1-4. The ALJ found that the petitioner had physically assaulted K.V., punched another person in the face and possessed a knife. Id. at 3. She found that he lied to his supervising agent about pursuing a relationship with K.V. and called and texted her repeatedly after she told him to stop. Id. Noting that this was the same kind of conduct that had resulted in his conviction, the ALJ concluded that confinement was necessary to protect the public. Id. She determined that the appropriate period of reincarceration was five years and two months. Id. at 4.

B.     State *Habeas* Proceedings

On August 6, 2014, the petitioner filed a *habeas* petition in Washington County Circuit Court. Id. at 25. The petitioner alleged that the attorney who had represented him at the revocation hearing provided ineffective assistance of counsel, id. at 26, as well as due process violations by the ALJ, id. at 27. Specifically, the petitioner alleged that his lawyer failed to object (1) to hearsay testimony of a police officer and the petitioner's supervising agent; (2) on due process grounds that the petitioner was not able to confront and cross-examine

adverse witness; and (3) to the ALJ's failure to determine good cause for the victims' failure to appear and be subject to cross-examination. Id. at 38.

The Washington County Circuit Court dismissed the petition after concluding that the petitioner had other adequate remedies at law, either through petitioning for *certiorari* or by filing a motion under State *ex rel.* Booker v. Schwarz, 270 Wis. 2d 745 (Ct. App. 2004). Id. at 26-30. The court added that even if its analysis was incorrect, and the petitioner didn't have any other adequate and available remedies for the issues he'd raised, the court still would not have held an evidentiary hearing because the petition lacked merit. Id. at 28. The court found that the two ineffective assistance of counsel claims failed under Strickland v. Washington, 466 U.S. 668 (1984), because counsel's performance was not deficient. Id. at 28-30. The circuit court pointed out that counsel objected to the medical records as hearsay (just not to the statements made by the victim). Id. at Counsel also challenged the reliability of the hearsay testimony in her closing statement by pointing out that the officer "was reading from a report written by somebody else" and asking that the officer be found not reliable. Id. at 29. The circuit court concluded that it would have been "fruitless" for the attorney to object given the ALJ's statement that she would consider whether the double hearsay had sufficient indicia of reliability. Id. And while the court acknowledged that counsel had not raised the issue of good cause to challenge the ALJ's determination to deny the petitioner's right to confrontation, she had asked in her closing argument why K.V. would ignore the subpoena and fail to show for the hearing. Id.

The Wisconsin Court of Appeals affirmed, also concluding that counsel was effective. Id. at 32-49. The appellate court limited the appeal to the ineffective assistance of counsel claims, finding that that issue was cognizable only through *certiorari* and that the petitioner had made no effort to show "that there is no other adequate remedy available in the law." Id. at 33, n. 1. The Wisconsin Court of Appeals determined that the petitioner did not and could not show prejudice. Id. at 41. The court noted that he had stipulated to one violation of the conditions of extended supervision, and that that stipulation alone provided a sufficient ground for revocation. Id. The court found that even if counsel had done the things the petitioner claimed she hadn't done at the hearing, he had not demonstrated a probability that the outcome of his hearing would have been any different. Id. at 49. The Wisconsin Supreme Court denied the petitioner's petition for review on May 15, 2017. Dkt. No. 50.

    C.    <u>§2254</u>

The petitioner filed this federal *habeas* petition on May 7, 2018. Dkt. No. 1. He raised four claims. The first two alleged ineffective assistance of counsel: he says that counsel was ineffective because (1) she did not object to hearsay testimony and (2) that she did not object to the ALJ's failure to make a finding of good cause when the witnesses failed to appear at the hearing. Id. at 6-7. The third claim is based on the ALJ's alleged failure to determine that the statements of the absent witnesses were reliable. Id. at 9. Finally, the petitioner argues that the supervising agent failed to provide him with exculpatory evidence. Id. at 9.

The respondent filed a motion to dismiss under Federal Rules of Civil Procedure 7(b) and 12(b)(6), Civil Local Rule 7 and 28 U.S.C. §2254(b). Dkt. No. 14. In the eight-page brief filed in support of the motion to dismiss, the respondent argued that all four claims were procedurally barred, that the ineffective assistance claim was not cognizable because the petitioner had no right to counsel in the revocation proceeding, and that the exculpatory evidence claim remained unexhausted. Dkt. No. 15 at 1.

In opposition to the motion to dismiss, the petitioner claimed that his agent told him an attorney would be appointed to represent him at the final revocation hearing and she provided a copy of the procedural rights to which he was entitled at that hearing. Dkt. No. 18 at 5. Citing Gagnon v. Scarpelli, 411 U.S. 778, 790 (1973), the petitioner argued that the State of Wisconsin determines whether he has a right to counsel in a revocation proceeding and that right would include the right to effective assistance of counsel. Id. at 3-4. The petitioner argued that any default occurred because the state was not clear on what issues a petitioner was required to raise in a petition for *certiorari*. Id. at 12. As to the respondent's claim that the petitioner hadn't exhausted his exculpatory evidence claim, the petitioner asked this court to hold these proceedings in abeyance while he awaits a decision from the state court on his claim that newly-discovered evidence could demonstrate his innocence. Id. at 16-18.

## II.      Judge Duffin's Recommendation

Judge Duffin found that the petitioner had a colorable claim that he had not violated his conditions of release because of his denial of the charges to his supervising agent. Dkt. No. 20 at 4 (citing United States v. Jones, 861 F.3d 687, 690 (7th Cir. 2017) (quoting United States v. Boultinghouse, 784 F.3d 1163, 1171 (7th Cir. 2015)); see also, *e.g.,* United States v. Turok, 699 F. App'x 569, 570 (7th Cir. 2017) (noting that due process may require the appointment of counsel if the defendant disputes the allegations, disputes the appropriateness of revocation, or asserts "substantial and complex grounds in mitigation"); United States v. Brown, 690 F. App'x 421, 423 (7th Cir. 2017) (same); United States v. Jiles, 672 F. App'x 598, 599 (7th Cir. 2017) (same)). Consequently, Judge Duffin concluded that the petitioner had a right to effective assistance of counsel at the revocation hearing. Id. at 4-5. He also questioned the respondent's argument that a defendant's right to counsel hinges on his denial of the allegations in their entirety. Id. at 5. Judge Duffin recommended that this court decline to dismiss Grounds One and Two, the ineffective assistance claims. Id. at 6.

Judge Duffin also addressed Grounds Three and Four. In Ground Three, the petitioner had argued that the ALJ did not explicitly find that the absent victim witnesses' hearsay statements were reliable. Dkt. No. 1 at 8. Judge Duffin found the petitioner had procedurally defaulted this claim. Dkt. No. 20 at 7. He concluded that a claim that an ALJ committed legal error in a revocation proceeding may be brought on *certiorari* review. Dkt. No. 20 at 6

(citing dkt. no. 5-1 at 33, n. 1). Because that claim was not cognizable on *habeas* review, Judge Duffin said, the Wisconsin Court of Appeals addressed only the ineffective assistance of counsel claims. Id.

Judge Duffin concluded that because the Wisconsin Court of Appeals did not consider the alleged errors as a matter of state law, the petitioner had procedurally defaulted his claim. Dkt. No. 20 at 7. The petitioner did not allege cause and prejudice or otherwise demonstrate that a failure to consider the defaulted claim would result in a miscarriage of justice. Id. at 8. For that reason, Judge Duffin determined the federal court could not consider the petitioner's claims about the alleged errors. Id. at 8.

As for the last ground about the supervising agent failing to disclose exculpatory evidence, Judge Duffin found that the petitioner had failed to exhaust that claim. Id. at 9. The petitioner had conceded that the claim was unexhausted but asked for a stay and abeyance. Id. Judge Duffin observed, however, that the request for stay and abeyance appeared to be moot, because on November 7, 2018, the Wisconsin Court of Appeals had summarily affirmed the circuit court's decision. Id. at 10 (citing State *ex rel.* Martinez v. Hayes, 2017AP238 (Wis. Ct. App. Nov. 7, 2018)). Judge Duffin explained that the petitioner had taken no further action in the Wisconsin courts and had not sought review by the Wisconsin Supreme Court. Id.

Judge Duffin recommended that this court dismiss the claim for two reasons: (1) the claim remained unexhausted and had been procedurally

defaulted; and (2) the Wisconsin Court of Appeals rejected the claim on adequate and independent state law grounds. Id. at 10-11.

Ultimately, Judge Duffin recommended that this court allow the petitioner to proceed on his two ineffective assistance of counsel claims (failing to object to the officer's hearsay testimony and failing to object to the ALJ's failure to make a good cause determination for the witness's failure to appear). Id. at 11. He recommended that the court dismiss the last two claims (the ALJ's failure to determine that the absent witnesses hearsay statements were reliable and the extended supervision agent failed to provide the petitioner with exculpatory evidence). Id.

## III.    Objections

The respondent objects that this court should dismiss the first two claims as procedurally barred. Dkt. No. 21. According to the respondent, the petitioner had no right to counsel at a revocation proceeding because he had made no "colorable claim that he did not commit the rule violations." Id. at 3. The respondent points to the fact that the petitioner admitted one of the violations, which gave the state an "undisputed basis to revoke" him under state law. Id. at 4. The respondent says that Judge Duffin "failed to hold [the petitioner] to the proper standard." Id. He argues that the petitioner's claim that he is innocent does not "rise to the level of a *colorable* claim, as required under federal law." Id. The respondent further argues that even if the petitioner had a right to counsel, the state courts addressed the merits of his claims and decided them based on state law. Id. at 5.

**IV. Standard of Review**

Federal Rule of Civil Procedure 72(b) states that when a party files a written objection to a magistrate judge's report and recommendation, the district court "must make a *de novo* determination only of those portions of the magistrate judge's disposition to which specific written objection is made." Johnson v. Zema Systems, Inc., 170 F.3d 734, 739 (7th Cir. 1999). "*De novo*" means that the district court judge must start from the beginning, and not defer to the magistrate judge's finding. The district court reviews the portions of the magistrate judge's recommendation to which there is no objection for clear error. Fed. R. Civ. P. 72(b); Johnson v. Zema Sys. Corp., 170 F.3d 734, 739 (7th Cir. 1999) (citations omitted).

**V. Analysis**

    A.   Dismissal of Grounds Three and Four

Neither party objected to the portion of Judge Duffin's recommendation that analyzed the petitioner's third and fourth grounds for relief. This court sees no clear error in Judge Duffin's reasoning or recommendation, and will adopt his recommendation and dismiss grounds three (the ALJ did not determine that the absent witnesses' hearsay statements were reliable) and four (the petitioner's extended supervision agent failed to provide the petitioner with exculpatory evidence).

    B.   Ineffective Assistance of Counsel Claims (Grounds One and Two)

The respondent first argued that the petitioner had no right to counsel in the revocation proceeding. See United States v. Yancey, 827 F.2d 83, 89 (7th

Cir. 1987) ("There can be no challenge to the adequacy of counsel unless there is an underlying right to counsel in a particular proceeding."). A defendant facing revocation of supervised release typically does not have a constitutional right to counsel because a revocation proceeding is not considered a criminal prosecution under the Sixth Amendment. United States v. Boultinghouse, 784 F.3d 1163, 1171 (7th Cir. 2015). Therefore, a defendant has "no Sixth Amendment right to counsel" in the context of a revocation proceeding. United States v. Eskridge, 445 U.S. F.3d 930, 933 (7th Cir. 2006); see also Boultinghouse, 784 F.3d at 1171.

But the Fifth Amendment's due process clause accords a defendant certain basic procedural protections, including a right to representation by counsel under certain circumstances. Boultinghouse, 784 F.3d at 1171; see also Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973). This right presumptively attaches when a defendant has a colorable claim that he has not violated the conditions of release, or if he has "a substantial case to make against revocation, notwithstanding any violation, that may be difficult to develop or present." Boultinghouse, 784 F.3d at 1171; Eskridge, 445 F.3d at 932–33.

The question is whether the petitioner's first two grounds for relief present claims to which the due process right would attach. Citing Eskridge, the respondent has argued that the petitioner has not made a colorable claim that he did not commit the rule violations. The respondent says that although the petitioner attacked the reliability of the evidence supporting the violations, he did not claim at the revocation hearing that he was innocent. Rather, he

11

submitted a written statement claiming that he couldn't remember what happened and hadn't done it, and the respondent emphasizes that the ALJ found the petitioner's statement "incredible." Dkt. No. 21 at 4 (citing Dkt. No. 5-1 at 48). The respondent further argues that the petitioner admitted to consuming alcohol and that a single violation is sufficient grounds for revocation. See State ex rel. Cutler v. Schmidt, 73 Wis. 2d 620, 622 (1976).

What does it mean to make a "colorable" claim that a petitioner didn't violate the conditions of his supervision? The court has not found a case in which the Seventh Circuit has defined "colorable" in this context. But it has been defined in other contexts. In the bankruptcy context, the "colorable claim" standard has been described as "a fairly low standard, well below certainty of success." In Matter of Home Casual, LLC, 534 B.R. 350, 353 (Bankr. W.D. Wis. 2015) (citing In re Archdiocese of Milwaukee, 483 B.R. 55, 858-59 (Bankr. E.D. Wis. 2012)). In the ERISA context, the Seventh Circuit has held that "[t]he requirement of a colorable claim is not a stringent one." Neuma, Inc. v. AMP, Inc., 259 F.3d 864, 878 (7th Cir. 2001) (quoting Panaras v. Liquid Carbonic Indus. Corp., 74 F.3d 786, 790 (7th Cir. 1996)). In the context of vindictive prosecutions, the Seventh Circuit has held that "[a] colorable basis [for a claim] is some evidence tending to show the essential elements of the claim," and that a defendant's claim of vindictive prosecution "must rise beyond the level of unsupported allegations." United States v. Heidecke, 900 F.2d 1155, 1159 (7th Cir. 1990) (citations omitted). It appears, therefore, that in any context, the "colorable claim" standard is not high.

In United States v. Jones, the Seventh Circuit applied the Fifth Amendment standard in the context of a revocation proceeding. United States v. Jones, 861 F.3d 687, 690 (7th Cir. 2017). For two of the violations in that case, the defendant had argued that counsel should have moved for modification to remove the conditions that required sex offender and mental health treatment. Id. The Seventh Circuit held that the Fifth Amendment due process right to counsel did not attach where the petitioner had not alleged that he did not violate the conditions or that there was a case to be made against revocation. Id. at 690. Similarly, the defendant did not state a Fifth Amendment claim where he argued that counsel should have challenged the efficacy of a sweat patch that tested positive for cocaine. Id. The Seventh Circuit construed this as an argument that the defendant "may not" have committed the violation, which was speculative, and rejected the defendant's challenge of a procedure that the Seventh Circuit deems to be a reliable method of detecting the presence of drugs. Id. at 690-691.

Unlike the defendant in Jones, the petitioner in this case denied the charges in the written statement admitted into evidence at the revocation hearing. Judge Duffin found that denial sufficient to constitute a colorable claim that the petitioner did not violate his conditions of release. Judge Duffin also concluded that the fact that the defendant had admitted one of the several violations—the consuming alcohol violation—did not necessarily negate the petitioner's right to counsel. Dkt. No. 20 at 5. The respondent argues that the petitioner's written statement did not give rise to a colorable claim because the

13

ALJ found the statement "incredible" and the petitioner stated only that he did not remember what happened because he had been drinking too much.

The question at this stage is not whether the ALJ found the petitioner's written statement to be credible, but whether he stated a colorable claim that he didn't commit the violations. It is true that the petitioner did not state in his written statement, "I did not commit the following violations." But it is clear from the statement and from his attorney's conduct at the hearing that he disputed the violations to his agent and in the written statement. He does not need to show that he would have prevailed to state a colorable claim—he needs only to present some facts in support of his denial of the violations, and his written statement contains such facts.

As to the respondent's argument that the petitioner couldn't present a colorable claim because he admitted to one of the violations, this argument fails for two reasons. First, it ignores the fact that the petitioner admitted a relatively minor violation—consuming alcohol when he wasn't supposed to. Had the ALJ concluded only that he'd committed that violation, it is highly unlikely that the ALJ would have imposed a five-year re-confinement sentence. In fact, the ALJ stated that she imposed the sentence she did because the *other* violations—the ones the petitioner denied—were like the offense of conviction. It makes sense that the petitioner admitted to the violation of consuming alcohol; his explanation of what happened with K.V. was that he didn't remember what happened because he'd been drinking too much. If the ALJ

had credited that statement, it is unlikely that she would have imposed the sentence she did.

Second, the respondent has provided no authority supporting his argument that the petitioner's admission that he drank too much strips him of any due process rights to counsel on all other violations.

The court agrees with Judge Duffin's analysis that the petitioner has stated a colorable claim.

### D. Arguments Raised for the First Time in the Objection

In his objection to Judge Duffin's recommendation, the respondent raises an argument that he did not raise in the motion to dismiss. For the first time, he argues that the ineffective assistance claims fail because they are based on meritless state law issues. Dkt. No. 21 at 5. The respondent asserts that state court decisions based on state law are not reviewable. Miller v. Zatecky, 820 F3d 275, 277 (7th Cir. 2016) (citing Bradshaw v. Richey, 546 U.S. 74 (2005) and Estelle v. McGuire, 502 U.S. 62 (1991)). He argues that the Wisconsin Court of Appeals examined the petitioner's claims of ineffective counsel and determined that the petitioner—bearing the burden of proof—had failed to demonstrate prejudice regarding either of the grounds for relief. He says that the Court of Appeals arrived at this decision based upon the application of standards established under Wisconsin law, State v. Erickson, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999), and the equivalent federal standard established via Strickland v. Washington, 466 U.S. 668, 697 (1984).

The Wisconsin Court of Appeals decision found that the petitioner had failed to demonstrate prejudice because one violation provided a ground for revocation. Dkt. No. 5-1 at 41. The court further reasoned that, although counsel did not object to hearsay in the police reports, "it is not reasonably probable the outcome of the revocation proceeding would have been different if counsel had objected to the 'hearsay testimony' of the officer and agent." Id. at 47. On the question of good cause for the victim's lack of appearance at the revocation proceeding, the Wisconsin Court of Appeals held that the ALJ satisfied the good cause requirement "by implicitly finding the evidence against Martinez to be reliable and trustworthy." Id. at 48.

The court is troubled by the respondent's failure to raise this argument until he filed his objection—well after the parties had briefed the motion to dismiss. The petitioner did not have an opportunity to respond to this argument in the briefing on the motion to dismiss. He did not respond to Judge Duffin's recommendation because Judge Duffin recommended allowing him to proceed on two of his claims, and this court's rules do not provide a party with the opportunity to, for lack of a better way to put it, object to an objection.

Because the petitioner did not present his arguments about the merits of the ineffective assistance of counsel claims before Judge Duffin, the court will not address them at this time. United States v. Melgar, 227 F.3d 1038, 1040 (7th Cir. 2000) (finding arguments raised for the first time in an objection are ordinarily waived); Lowe v. Frank, 2004 WL 635704, at *3 (W.D. Wis. Mar. 9, 2004) ("Petitioner asserted this claim for the first time in his objections to the

magistrate judge's report and recommendation. That was too late."). The Seventh Circuit has taken the same approach with litigants raising arguments for the first time in reply briefs. <u>Narducci v. Moore</u>, 572 F.3d 313, 324 (7th Cir. 2009).

## VI. Motion for Appointment of Counsel (Dkt. No. 23) and Motion to Amend Appointment of Counsel (Dkt. No. 25)

On January 18, 2019, the petitioner filed a motion for appointment of counsel. Dkt. No. 23. He told the court that he could not afford a lawyer; that his incarceration would "greatly limit his ability to litigate the issues in this case," which he characterized as complex; that he had limited access to the law library and limited knowledge of the law; and that that he has only a high school equivalency degree and no legal training. <u>Id.</u>

On March 1, 2019, the court received from the plaintiff a motion to amend his request for appointment of counsel. Dkt. No. 25. In this motion he explained that he had reached out to three lawyers, asking them to represent him. <u>Id.</u> He reported that he'd heard back from only two of the three lawyers. <u>Id.</u> He attached letters from the two who'd responded, indicating that they were too busy to assist him. Dkt. No. 25-1.

There is no statutory or constitutional right to court-appointed counsel in federal civil litigation. <u>Giles v. Godinez</u>, 914 F.3d 1040, 1052 (7th Cir. 2019). This is particularly true in *habeas* cases. The Seventh Circuit Court of Appeals has held that "[a] litigant is not entitled to appointed counsel in a federal postconviction proceeding," although it notes that a district court "may appoint counsel if 'the interests of justice so require.'" <u>Taylor v. Knight</u>, 223 Fed. App'x

503, 504 (7th Cir. 2007) (quoting 18 U.S.C. § 3006A(a)(2)(B)). The Criminal Justice Act gives a district court the discretion to appoint counsel if "the interests of justice so require." 18 U.S.C. §3006A(a)(2)(B)).

The interests of justice do not require the court to appoint counsel for the petitioner at this stage. The legal, factual and practical difficulties of the petitioner's *habeas* petition do not exceed his capacity to coherently litigate his case. The petitioner has demonstrated that he can prepare and respond to court filings and file motions on his own behalf. The petitioner successfully filed a *habeas* petition with an accompanying legal brief, a motion for leave without prepaying the filing fee, two motions asking for appointment of counsel and an eighteen-page brief in opposition to the motion to dismiss. The petitioner's communications with the court show that he can express himself, and describe the circumstances of his case. At this stage, the legal issues and factual circumstances involved in the petitioner's *habeas* petition are not particularly complex—the court understands the petitioner's challenges to his lawyer's work at the revocation hearing.

The court also notes that in most cases, it decides *habeas* petitions on the briefs. The parties are not required to collect evidence or witnesses or participate in a hearing. The petitioner will not be required to investigate or find witnesses or try to question witnesses in court. He will need only to explain in writing why he believes his lawyer was ineffective, and to respond to the respondent's arguments in opposition. As to limited access to the law library, the petitioner may have more access at Stanley than he had at his prior

institution. Even if he doesn't, he can always ask the court for additional time to file documents if he hasn't been able to get to the library.

Finally, as to the facts that the petitioner is in custody, can't hire a lawyer and has no legal education, this is true for most incarcerated plaintiffs and petitioners. Almost every incarcerated litigant asks this court to appoint a lawyer on these grounds, and the court does not have the funds to pay lawyers to represent incarcerated inmates. It relies on volunteer lawyers for that, and there are nowhere near enough volunteer lawyers to help all the inmates who ask. In a case like the petitioner's, where he is able to express himself and communicate with the court clearly, the court will appoint counsel only if the case reaches a stage where it is clear that the petitioner no longer can explain his circumstances. That isn't the case here.

The court accepts the petitioner's amended motion, but will deny the motion to appoint counsel without prejudice. The petitioner may renew the motion if the case reaches a stage where the petitioner believes it is too complex for him to handle on his own.

The court reminds the petitioner that it is his responsibility to update the court when he transfers to a new facility and to inform the court of any change of address.

## VII. Conclusion

The court **ADOPTS** Judge Duffin's report and recommendation. Dkt. No. 20.

The court **DENIES** the respondent's motion to dismiss as to grounds one and two. Dkt. No. 14.

The court **GRANTS** the respondent's motion to dismiss as to grounds three and four. Dkt. No. 14.

The court **ORDERS** that the respondent shall file an answer complying with Rule 5 of the Federal Rules Governing Habeas Corpus Cases Under §2254 within **thirty days** of this order.

The court **ORDERS** that the parties must comply with the following schedule for filing briefs on the merits of the petitioner's claims:

(1) the petitioner has forty-five days after the respondent files the answer to file a brief in support of his petition;

(2) the respondent has forty-five days after the petitioner's initial brief is filed to file a brief in opposition;

(3) the petitioner has thirty days after the respondent files the opposition brief to file a reply brief, if he chooses to file such a brief.

The court **GRANTS** the petitioner's motion to amend/correct motion for appointment of counsel. Dkt. No. 25.

The court **DENIES without prejudice** the petitioner's motion to appoint counsel. Dkt. No. 23.

Dated in Milwaukee, Wisconsin this 30th day of September, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**