UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

VINCENT MARTINEZ,

        Petitioner,

  v.                          Case No. 18-cv-716-pp

CHRIS BUESGEN,[1]

        Respondent.

---

**ORDER DISMISSING PETITION FOR WRIT OF *HABEAS CORPUS*
(DKT. NO. 1), DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY
AND DISMISSING CASE WITH PREJUDICE**

---

On May 7, 2018, the petitioner, who is incarcerated at Stanley

Correctional Institution and is represented by counsel, filed a petition for writ

of *habeas corpus* under 28 U.S.C. §2254, challenging his 2013 revocation of

supervision. Dkt. No. 1. On September 30, 2019, the court adopted Magistrate

Judge William Duffin's report and recommendation, granted in part and denied

in part the respondent's motion to dismiss and ordered the respondent to

answer the petitioner's remaining claims. Dkt. No. 29. The respondent

answered the petition, dkt. no. 30, the petitioner filed a brief in support of the

---

[1] Rule 2(a) of the Rules Governing Section 2254 Cases in the United States
District Courts says that if someone is currently in custody under a state-court
judgment, "the petition must name as respondent the state officer who has
custody." Because the petitioner is in custody at Stanley Correctional
Institution, the court has substituted warden Chris Buesgen as the
respondent.

1

petition, dkt. no. 46, the respondent filed a brief in opposition, dkt. no. 47, the petitioner filed a reply brief in support of the petition, dkt. no. 48.

Because the petitioner is not entitled to relief under 28 U.S.C. §2254, the court will deny the petition and dismiss the case with prejudice.

## I.    Background

### A.    State Case

#### 1.    *Aggravated battery conviction*

On February 26, 2003, the petitioner pled guilty in Washington County Circuit Court to aggravated battery. Dkt. No. 1 at 2. Three months later, the court sentenced the petitioner to three years and six months of initial confinement followed by ten years of extended supervision. Id. On January 26, 2010, the petitioner was released on extended supervision with seven years available for reconfinement. Dkt. No. 5-1 at 2.

#### 2.    *Revocation*

In August 2013, the Wisconsin Department of Corrections initiated revocation proceedings, alleging that the petitioner (1) pursued a relationship with K.V. without prior agent approval; (2) failed to provide true and correct information to his agent; (3) strangled K.V.; (4) beat K.V. to the point she required eleven stitches to her face; (5) consumed alcohol; (6) punched C.J.; (7) possessed a knife; and (8) called K.V. thirty times. Dkt. No. 5-1 at 1; Dkt. No. 30-5 at ¶2. At the October 8, 2013 revocation hearing, the petitioner appeared in person with Attorney Katherine Romanowich. Dkt. No. 5-1 at 51. He stipulated to the allegation that he had consumed alcohol. Id. at 54. In a

written statement, the petitioner denied the remaining allegations. Dkt. No. 18-1 at 6. He claimed that he was ambushed, did not have a knife and did not remember what happened. Id. He said that he was just friends with K.V., and that while he wanted to date her, his "P.O. said no." Id. He denied beating K.V., claiming that K.V. told him "she fell down her stairs when she was wearing safety boots." Id. at 7.

Neither victim K.V. nor male victim C.J. testified at the revocation hearing. Division of Community Corrections Agent Jennifer Duffy-Juoni testified that although the petitioner denied having a prior relationship with K.V., K.V. told Duffy-Juoni that she had been in a relationship with the petitioner. Dkt. No. 5-1 at 2. Duffy-Juoni explained that K.V. had provided a written statement about her relationship with the petitioner, "including a description of the incidents during which [the petitioner] strangled her, punched her, and threatened her." Id.

Fond du Lac Police Department Officer Kristi Meilahn testified that she interviewed K.V. on August 4, 2013, during which K.V. claimed that the petitioner "had threatened to kill her and her family and that she was very afraid of him." Id. Officer Meilahn testified that K.V. told her that the petitioner "had called her 30 times that day and that he continued to text message her after she told him to stop." Id. As Administrative Law Judge Sally Pederson (ALJ) recounted in her decision,

> [K.V.] told Officer Meilahn that [the petitioner] then came to her apartment, so she was scared and asked her friend [C.J.] to come over. According to Officer Meilahn's report, [K.V.] saw [the petitioner] and [C.J.] fighting on the ground in the hallway of the apartment

3

building and she saw a knife fall out of [the petitioner's] pocket. According to the police report, the police officers found [the petitioner] in the alley behind the apartment building, and the officer's personal observation was that [the petitioner] was bleeding and agitated. One of the police officers found the knife in a sewer behind the apartment and a photograph of the knife is attached to the police report. (Ex. 4) In a separate interview, [C.J.] told Officer Meilahn that he came over to [K.V.'s] apartment because she asked him to come because she was scared of her ex-boyfriend [the petitioner] and that [the petitioner] attacked and punched him in the hallway of the apartment building. (Ex 4)

Id. at 2-3.

Officer Meilahn added that "[K.V.] stated that [the petitioner] had beat her up approximately four weeks earlier," resulting in eleven stitches in K.V.'s face. Id. at 3. "Officer Meilahn testified that she personally observed [K.V.] and could still see scarring on [K.V.'s] cheek and eye area." Id. She testified that she obtained a medical release from K.V. before reviewing medical records reflecting that K.V. received eleven stitches in her face on June 24, 2013. Id.

During Officer Meilahn's testimony, Attorney Romanowich objected on the grounds that Officer Meilahn provided impermissible double hearsay. Dkt. No. 30-5 at ¶4. The ALJ overruled the objection, reasoning that hearsay was admissible in revocation hearings, that no rule prohibited double hearsay and that she ultimately would consider whether the double hearsay testimony had sufficient indicia of reliability. Id. Without objection, the ALJ admitted into evidence nine exhibits, including a Fond Du Lac Police Department report, the petitioner's written statement and K.V.'s written statement. Id. at ¶2.

Three weeks later, the ALJ revoked the petitioner's extended supervision. Dkt. No. 5-1 at 4. Stating that it was "not corroborated by any other evidence

4

on the record," the ALJ deemed the petitioner's written statement "incredible."

Id. at 2. On the other hand, the ALJ found Officer Meilahn's testimony "credible and reliable," explaining that

> [h]er testimony as to what she personally observed in the hospital medical records is reliable, and there is no rational reason to doubt the truthfulness of the medical record. Moreover, Officer Meilahn's personal observation of scarring on [K.V.'s] face and what Officer Meilahn read in the hospital medical records corroborated [K.V.'s] hearsay statements to the police officer and the agent about needing stitches after being punched in the face by [the petitioner].

Id. at 3.

The ALJ concluded that, "[b]ased upon the record as a whole, and particularly the evidence described above, I find that the Department met its burden of proving by a preponderance of the credible evidence" that the petitioner committed each of the disputed violations of his supervision. Id. The ALJ found that the petitioner "physically assaulted [K.V.], requiring her to receive 11 stitches to her face," "punched [C.J.]," "possessed a knife," "lied to his agent about pursuing a relationship with [K.V.] and called and texted [K.V.] repeatedly after she told him to stop." Id. Stating that it was "the same type of assaultive behavior that resulted in his conviction for aggravated battery," the ALJ found "confinement [was] necessary to protect the public from further criminal activity by [the petitioner]." Id. Due to "the nature and severity of [the petitioner's] original offense, his institutional conduct record, his conduct and behavior while on supervision, and the period of reincarceration needed to protect the public from the risk of further criminal activity, to prevent depreciation of the seriousness of the violations or to provide treatment in

5

confinement," the ALJ found that five years and two months of reincarceration was "necessary and appropriate." Id. at 4.

### 3. *State habeas petition*

On July 11, 2014, the petitioner filed a petition for writ of *habeas corpus* in the circuit court. Id. at 25. He argued that Attorney Romanowich had provided ineffective assistance of counsel during the revocation proceedings and that the ALJ had violated his due process rights. Id. at 26, 27. The petitioner alleged that his lawyer failed to object (1) to hearsay testimony of a police officer and the petitioner's supervising agent; (2) that the ALJ did not allow the petitioner to confront and cross-examine adverse witnesses; and (3) to the ALJ's failure to explicitly determine good cause for the victims' failure to appear and be subject to cross-examination. Id. at 38.

Finding that the petitioner had other adequate remedies at law, the circuit court dismissed the *habeas* petition. Id. at 26-30. The court found that even if the petitioner had no other adequate remedy at law, the petition lacked merit. Id. at 28. It found the petitioner's claim that Attorney Romanowich failed to object to hearsay statements at the revocation hearing "not entirely correct," reasoning that she "did object on a hearsay basis to the ALJ's consideration of the St. Agnes Hospital records." Id. at 29. And although the circuit court observed that Attorney Romanowich had not objected to K.V.'s alleged statements, it concluded "Wisconsin law is clear that a revocation decision may be based entirely on hearsay as long as the hearsay is reliable." Id. The court

6

found that "it would have been fruitless for [Attorney Romanowich] to object to the admission of the hearsay evidence given the position of the ALJ." Id.

Regarding a good cause determination, the circuit court concluded that "the good cause requirement is always met when the evidence offered in lieu of an adverse witness's live testimony would be admissible under the Wisconsin rules of evidence." Id. (citing State ex rel. Simpson v. Schwarz, 250 Wis. 2d 214, 229 (Wis. Ct. App. 2001)). The circuit court concluded that under Simpson, "[t]he ALJ's determination of reliability is implicitly a finding of trustworthiness under the catchall hearsay exception." Id. at 30. The court stated that "Attorney Romanowich's repeated challenge in her closing statement to the reliability of the hearsay testimony, combined with her questioning of the failure of [K.V.] to appear, establish[ed] that her representation was not deficient under the circumstances of the revocation hearing." Id.

### 4. Appeal from dismissal of habeas petition

The petitioner appealed from the circuit court's dismissal of his state habeas petition. Dkt. No. 30-5. On appeal, he argued that Attorney Romanowich had provided ineffective assistance at the revocation hearing "because she did not object: (1) to the 'hearsay testimony' of [Officer Meilahn] and [Agent Duffy-Juoni]; (2) on due process grounds that [the petitioner] was unable to 'confront and examine adverse witnesses'; and (3) to the ALJ's 'failure to determine good cause' for the victim's and the male victim's 'failure to appear and be subject to cross-examination.'" Id. at ¶10.

As to his ineffective assistance claim, the Wisconsin Court of Appeals concluded that the petitioner had not demonstrated "a reasonable probability that the ALJ would have sustained the objections [the petitioner] claims counsel should have made as well as a reasonable probability sustaining those objections would have resulted in a different outcome." Id. at ¶15. The appellate court found that the petitioner had not explained—either to the circuit court or to the Court of Appeals—how the failure to object had prejudiced him. Id. The court observed that the petitioner had stipulated to one violation of the conditions of supervision—consuming alcohol—and that that violation alone provided a sufficient ground for revocation. Id. at ¶16. It explained that hearsay is admissible at revocation hearings and that the petitioner had acknowledged that the medical records were admissible. Id. at ¶17. And, the Court of Appeals noted, Romanowich *had* objected to the officer's testimony about medical information she'd received, arguing that it was "double hearsay." Id. Noting that the ALJ had overruled that objection, the Court of Appeals saw "no reason to believe it is reasonably probable that had counsel subsequently objected to the officer's or agent's testimony as to directly reviewing the medical records, or objected to admission of the police reports, the ALJ would have sustained the objection and prevented admission of the evidence." Id.

The Court of Appeals went into extensive detail about the evidence the ALJ reviewed in concluding that the Officer Meilahn was credible and reliable. Id. at ¶¶18-22. It discussed the officer's testimony about seeing the scarring on

8

the victim's face, and her description of her first-hand observations of the victim's behavior on August 4, 2013 (the date of the incident). Id. at ¶24.

Regarding the petitioner's assertion that his lawyer should have objected to the inability to confront and cross-examine the victim and the male victim and the ALJ's alleged failure to find good cause for their lack of appearance at the hearing, the Court of Appeals noted that the ALJ's decision made a single reference to the male victim, who said he came to the victim's apartment because she asked him to because she was afraid of the petitioner, and that the petitioner had attacked and punched him in the apartment building hallway. Id. at ¶26. The Court of Appeals found this statement "corroborative of, and indeed largely cumulative to, a verbal statement the victim provided the officer on August 4, as recorded in the officer's report, and the victim's August 8 written statement . . . ." Id. The appellate court concluded that there was no basis for it to determine that "had the ALJ not considered the statement by the male victim [the petitioner] would not have been revoked." Id. It observed that the ALJ had deemed the petitioner's written statement (asserting that the male victim was the aggressor) "incredible." Id.

As for good cause, the Court of Appeals found that the ALJ had satisfied the good cause standard by implicitly finding the evidence against the petitioner to be trustworthy and finding credible the officer's observation of the female victim's "extreme fear" of the petitioner. Id. at ¶27. The appellate court did not believe that there was a "reasonable probability that had counsel objected to the victim's lack of appearance, the ALJ would not have explicitly

9

stated a finding of good cause based upon the reliability of the evidence, as well as the additional fact the agent had subpoenaed the victim to provide testimony at the hearing and expected her to appear; she just did not do so." Id.

In sum, the Court of Appeals found that the petitioner had not demonstrated a reasonable probability that the result of his revocation hearing would have been different had his attorney made the objections he argued she should have made. Id. at ¶28. Given that, the court found the petitioner could not prove prejudice. Id.

    5.   *Petition for review*

On May 15, 2017, the Wisconsin Supreme Court denied the petitioner's petition for review. Dkt. No. 30-8.

    B.   <u>Federal *Habeas* Petition</u>

On May 7, 2018, the petitioner filed this federal *habeas* petition. Dkt. No. 1. The petition asserted four grounds for relief: (1) Attorney Romanowich "provided ineffective assistance of counsel in failing to object to the hearsay testimony of Officer Meilahn," (2) Attorney Romanowich "provided ineffective assistance of counsel by failing to object to the administrative law judge failure to make a good cause determination for the witnesses [failure] to appear," (3) the ALJ erred by failing to "determine that the absent witnesses hearsay statements were reliable," and (4) "[the petitioner's] extended supervision agent failed to provide [the petitioner] with exculpatory evidence." Dkt. No. 1 at 6-9.

On May 29, 2018, Magistrate Judge William E. Duffin screened the petition and allowed the petitioner to proceed on his claims. Dkt. No. 9.

On July 19, 2018, the respondent filed a motion to dismiss the petition. Dkt. No. 14. The respondent argued that the petitioner's ineffective assistance of counsel claims were not cognizable on *habeas* review, dkt. no. 15 at 4, that the petitioner had procedurally defaulted his claim that the ALJ erred, id. at 6, and that the petitioner had not exhausted his exculpatory evidence claim, id. at 7. On January 11, 2019, Judge Duffin issued a report recommending that this court grant in part and deny in part the respondent's motion to dismiss. Dkt. No. 20 at 11. Judge Duffin concluded that the petitioner had asserted cognizable ineffective assistance of counsel claims. Id. at 4-5. He reasoned that the petitioner had invoked the right to the effective assistance of counsel when he sufficiently denied the allegations of his extended supervision violations. Id. Judge Duffin recommended, however, that this court dismiss the petitioner's other claims as procedurally defaulted, reasoning that the Wisconsin Court of Appeals had relied on an independent and adequate state law ground to reject the petitioner's claim that the ALJ erred in failing to make a good cause finding, id. at 6-7, and that the petitioner failed to properly present to the state courts his claim that his supervising agent failed to disclose exculpatory evidence, id. at 9-10.

The petitioner did not object to Judge Duffin's recommendations. Dkt. No. 22. The respondent did object, disputing Judge Duffin's conclusions that

the petitioner's ineffective assistance claims were cognizable on *habeas* review. Dkt. No. 21.

On September 30, 2019, the court adopted Judge Duffin's report and recommendation in full and granted in part and denied in part the respondent's motion to dismiss. Dkt. No. 29. The court noted that neither party had objected to the portion of Judge Duffin's recommendation that analyzed the petitioner's third and fourth grounds for relief (the ALJ's failure to determine that the statements of the absent witness were reliable and the petitioner's argument that the supervising agent had failed to provide him exculpatory evidence), found no clear error with Judge Duffin's conclusions in that regard and adopted his recommendations to dismiss the third and fourth grounds. Id. at 10. The court overruled the respondent's objection to Judge Duffin's recommendation that the court deny the motion to dismiss grounds one and two—the ineffective assistance of counsel claims. Id. at 10-17. The court ordered the respondent to answer the petitioner's ineffective assistance of counsel claims, finding that the petitioner's written statement and Attorney Romanowich's conduct at the revocation hearing showed the petitioner disputed the alleged violations of his extended supervision. Id. at 14-15, 20. Three weeks later, the respondent answered the remaining claims. Dkt. No. 30.

On October 29, 2020, the petitioner filed a brief in support of his petition. Dkt. No. 46. The petitioner—by this time represented by counsel—indicated that he has

> now narrowed down his claims to one claim of ineffective assistance
> of counsel for failing to object to the violation of [the petitioner's] 5th

12

Amendment due process right to confront and cross-examine KV and CJ, as well as not objecting to the ALJ's failure to determine good cause for both victim's [sic] failure to appear and be subjected to cross-examination prior to the admission of double hearsay testimony provided by Meil[ah]n and Duff-Juoni.

Id. at 2. The petitioner claims that "the ALJ's failure to a make a specific finding of good cause for not allowing confrontation and cross-examination of adverse witnesses requires automatic reversal of the ALJ's decision to revoke [the petitioner's] E[xtended] S[upervision]." Id. The petitioner asserts that the last state court to decide the petitioner's claims—the Wisconsin Court of Appeals—"unreasonably applied the Morrissey requirement[2] to the facts" of his case. Id. at 10. He also argues that the Court of Appeals based its decision on an unreasonable determination of the facts when it concluded that the hearsay statements of Meilahn and Duffy-Juoni would be admissible because they had circumstantial guarantees of trustworthiness. Id. at 14. Finally, the petitioner argues that the Court of Appeals unreasonably applied the prejudice prong of Strickland v. Washington, 466 U.S. 668 (1984). Id. at 17.

Five weeks later, the respondent filed a brief in opposition to the petition. Dkt. No. 47. The respondent argues that the petitioner has not demonstrated that the Court of Appeals' decision was not contrary to, nor did it involve an unreasonable application of, Strickland. Id. at 1. He asserts that reliability and good cause findings need not be explicit. Id. at 7. He maintains that if the

---

[2] The petitioner provided neither the full title of the "Morrissey" case nor the cite. The court assumes he means Morrissey v. Brewer, 408 U.S. 471 (1972), which describes the due process requirements for parole revocation.

Case 2:18-cv-00716-PP   Filed 10/18/22   Page 13 of 34   Document 49

hearsay evidence was reliable, its admission does not violate due process. Id. The respondent recounted the Court of Appeals' reasoning as to why the petitioner could not show prejudice resulting from his lawyer's failure to object to Meilahn's alleged "hearsay" testimony. Id. at 8-9. He recounted the appellate court's observation that counsel *did* object to some of the officer's testimony on hearsay grounds. Id. at 9. Similarly, the respondent recounted the appellate court's bases for finding that any objection to the ALJ's failure to explicitly state good cause for the victim's failure to appear would not have impacted the outcome of the case. Id. at 10-11.

As to the petitioner's federal *habeas* arguments, the respondent argues that the Court of Appeals' analysis was consistent with Morrissey. Id. at 12-13. He asserts that the petitioner's second argument—that the ALJ's decision to revoke his supervision was based on an unreasonable determination of facts in light of the evidence and the ALJ's conclusion that the victim's hearsay statements to the officer and agent was corroborated by medical records—is one of the claims that the court dismissed. Id. at 13. And he argues that the Court of Appeals correctly applied the right standard—the Strickland standard—and asserts that the petitioner misstates the applicable standard; the respondent argues that the standard is not whether counsel's allegedly deficient performance undermined confidence in the outcome, but whether there was a "reasonable probability" that but for the allegedly deficient performance, the result of the hearing would have been different. Id. at 14.

The petitioner filed a reply brief in support of the petition. Dkt. No. 48. The petitioner relies heavily on the Wisconsin Court of Appeals' decision in Simpson, 250 Wis. 2d 214 in opposing the respondent's arguments. Id. at 2-3. He reiterates that the appellate court made an unreasonable determination of the facts in light of the evidence, asserting that the hospital records contradicted the victim's version of events. Id. at 4-5. And he asserts that he was prejudiced by his counsel's deficient performance. Id. at 6-7.

## II. Analysis

### A. Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, a federal court may grant *habeas* relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Miller v. Smith, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. §§2254(d)(1), (2)). A federal *habeas* court reviews the decision of the last state court to rule on the merits of the petitioner's claim. Charlton v. Davis, 439 F.3d 369, 374 (7th Cir. 2006).

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)). "The 'unreasonable application' clause requires the state

15

court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (emphasis added). In other words, §2254(d)(1) allows a court to grant *habeas* relief only where it determines that the state court applied federal law in an "objectively unreasonable" way. Renico, 559 U.S. at 773. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 102 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standard under §2254(d) is 'difficult to meet' and 'highly deferential.'" Saxon v. Lashbrook, 873 F.3d 982, 987 (7th Cir. 2017) (quoting Cullen v. Pinholster, 563 U.S. 170, 181 (2011)).

    B.    Ineffective Assistance of Counsel

    "Under *Strickland v. Washington*'s familiar, two-pronged test for ineffective assistance of counsel, [the petitioner] must demonstrate that (1) his counsel's performance was deficient; and (2) that deficiency resulted in prejudice." United States v. Berg, 714 F.3d 490, 496-97 (7th Cir. 2013) (citing Strickland, 466 U.S. at 687). "The performance prong of *Strickland* requires a [petitioner] to show 'that counsel's representation fell below an objective standard of reasonableness.'" Lafler v. Cooper, 566 U.S. 156, 163 (2012) (quoting Hill v. Lockhart, 474 U.S. 52, 57 (1985)). "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most

16

common custom." Harrington, 562 U.S. at 105 (quoting Strickland, 466 U.S. at 690). "To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Lafler, 566 U.S. at 163 (quoting Strickland, 466 U.S. at 694).

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254 is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential", and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

Harrington, 562 U.S. at 105 (internal citations and quotations omitted).

Again, the petitioner's federal *habeas* petition originally asserted four claims: (1) Attorney Romanowich "provided ineffective assistance of counsel in failing to object to the hearsay testimony of Officer Meilahn," (2) Attorney Romanowich "provided ineffective assistance of counsel by failing to object to the administrative law judge failure to make a good cause determination for the witnesses [failure] to appear," (3) the ALJ erred by failing to "determine that the absent witnesses hearsay statements were reliable," and (4) "[the petitioner's] extended supervision agent failed to provide [the petitioner] with exculpatory evidence." Dkt. No. 1 at 6-9. The court granted in part and denied in part the respondent's motion to dismiss, leaving only the petitioner's first two grounds—his ineffective assistance of counsel claims. Dkt. No. 29 at 19-20.

17

In the brief in support of his petition, the petitioner states he

> "has now narrowed down his claims to one claim of ineffective
> assistance of counsel for failing to object to the violation of [his] 5th
> Amendment due process right to confront and cross-examine KV
> and CJ, as well as not objecting to the ALJ's failure to determine
> good cause for both victim's [sic] failure to appear and be subjected
> to cross-examination prior to the admission of double hearsay
> testimony provided by Meil[ah]n and Duff-Juoni."

Dkt. No. 46 at 2. He insists that he "will only pursue the ineffective assistance

of counsel claim specifically relating to Romanowich's failure to object to

violations of [the petitioner's] right to confrontation, as well as the failure to

object to the ALJ's failure to determine good cause for not allowing

confrontation due to the lack of appearance of both KV and CJ." Id. at 5.

But the petitioner's "one" ineffective assistance of counsel claim consists

of three assertions of alleged errors in the Court of Appeals' decision: he asserts

that the Court of Appeals (1) unreasonably applied Morrissey, 408 U.S. at 480,

id. at 10; (2) rendered a decision based on an unreasonable determination of

the facts in light of the evidence presented in the state court proceeding, id. at

14 and (3) unreasonably applied Strickland, id. at 17. None of these arguments

entitle the petitioner to *habeas* relief.

1. *Application of Morrissey*

In his petition, the petitioner asserted at Ground One that Romanowich

was ineffective in failing to object to Meilahn's hearsay testimony; specifically,

he asserted that Meilahn didn't witness any of the events she testified to and

that she testified to statements she obtained from the victims. Dkt. No. 1 at 6.

Judge Duffin concluded that the petitioner had alleged sufficient facts to

demonstrate that he was entitled to effective assistance of counsel at the revocation hearing. Dkt. No. 20 at 5-6. This court agreed. Dkt. No. 29 at 15. The question at this stage is whether the petitioner's counsel was ineffective.

Given that question, it is confusing that although the petitioner's first argument in support of the petition is four pages long, it does not mention his revocation counsel or ineffective assistance or Strickland. He does not argue that the Court of Appeals unreasonably applied Strickland. The petitioner begins by arguing that "the hearing officer ALJ never asserted grounds for denying confrontation and failed to find good cause to deny confrontation of KV and CJ and permit hearsay testimony," citing Morrissey, 408 U.S. 471. Dkt. No. 46 at 10. He spends several pages discussing how courts have interpreted Morrissey's due process requirements for parole revocation hearings. Id. at 10-12. He then asserts that although the Court of Appeals "correctly identified Morrissey as the controlling authority governing the analysis of this claim," (without identifying what he means by "this claim"), the Court of Appeals "unreasonably refused to extend the principles established in Morrissey to a contact where it should apply." Id. at 12. The petitioner contends that the Court of Appeals unreasonably applied Morrissey because the ALJ failed to "weigh [the petitioner's] constitutionally guaranteed right to confrontation against the grounds asserted by the ALJ's denying confrontation," failed to "state the reasons for denying [the petitioner's] right to confront and cross-examine adverse witnesses" and failed to "make a specific finding of good cause." Id. at 13. The petitioner "posits that the ALJ's decision to revoke his

19

[extended supervision] should be reversed, not only on the basis of a lack of good cause finding, but also the violation of due process rights to confrontation and cross-examination when the ALJ permitted Officer Meil[ah]n and Agent Duffy-Juoni to offer hearsay testimony regarding what KV told them because [the petitioner] was prevented from exercising his rights pursuant to *Morrissey* requirements." Id. He then goes on to discuss whether the ALJ's failure to find good cause requires automatic reversal. Id. at 14.

These arguments criticize the administrative law judge, not the petitioner's revocation counsel. They address the petitioner's Fifth Amendment rights, not his Sixth Amendment right to counsel. In his reply brief, the petitioner *does* mention his revocation lawyer. He asserts that Romanowich failed to object that the ALJ violated his Fifth Amendment due process rights "for not allowing confrontation and cross-examination of the alleged victims as they failed to appear at the 10/08/2013 hearing." Dkt. No. 48 at 1. Reading the initial brief and the reply brief together, it appears that the petitioner is trying to shoehorn his claim that the ALJ violated his Fifth Amendment rights into an ineffective assistance claim by implying that had the Court of Appeals correctly applied Morrissey, it would have granted relief on his ineffective assistance of counsel claim. This tortured argument fails.

A federal *habeas* court "measure[s] a state prisoner's habeas petition against the last reasoned state-court decision on the merits." Flint v. Carr, 10 F.4th 786, 796 (7th Cir. 2021). Here, that is the Wisconsin Court of Appeals' decision affirming the denial of the state *habeas* petition. Although the

petitioner spills much ink discussing how the *administrative law judge* erred at the revocation hearing, this court is not measuring the *habeas* petition against the administrative law judge's decision. It measures the petition against the Court of Appeals' decision to determine whether that court's decision was contrary to, or involved an unreasonable application of, clearly established law as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in state court.

The Court of Appeals discussed <u>Morrissey</u> in considering the petitioner's argument that "his counsel should have objected on procedural grounds to [the petitioner's] inability to confront and cross-examine the victim and the male victim and the ALJ's failure to find 'good cause' for their lack of appearance." Dkt. No. 30-5 at ¶25. It noted that under <u>Simpson</u> and <u>Morrissey</u>, a probationer or parolee has the right to confront and cross-examine adverse witnesses at a revocation hearing unless the hearing officer finds good cause for not allowing confrontation. <u>Id.</u> It determined that it had "no basis" to conclude "that had the ALJ not considered the statement by the male victim [the petitioner] would not have been revoked." <u>Id.</u> at ¶26. <u>Id.</u> It also stated that it did not believe that there was a reasonable probability that had counsel objected to the fact that the victim did not appear, the ALJ would not have explicitly stated a finding of good cause, given both the reliability of the other evidence and the fact that the agent had tried to get the victim to appear by subpoenaing her. <u>Id.</u> at ¶27.

This court must determine whether the Court of Appeals unreasonably applied clearly established federal law in making those determinations—whether its application of federal law was objectively unreasonable. The Court of Appeals did not unreasonably apply clearly established federal law.

"[R]evocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." Morrissey, 408 U.S. at 480. The Confrontation Clause of the Sixth Amendment provides that in all criminal prosecutions, the accused enjoys the right to be confronted with the witnesses against him. U.S. CONST. amend. VI. In Crawford v. Washington, 541 U.S. 36, 68 (2004), the Supreme Court held that for a court to admit testimonial hearsay in a criminal prosecution, the Sixth Amendment requires that the declarant be unavailable and the defendant have had a prior opportunity for cross-examination. "But parole revocations are not criminal prosecutions for Sixth Amendment purposes, so *Crawford* is inapplicable." Schmanke v. Irvins, 207 F. App'x 655, 658 (7th Cir. 2006) (citing Kelley, 446 F.3d at 692; United States v. Hall, 419 F.3d 980, 985-86 (9th Cir. 2005)).

The fact that a revocation proceeding is not a criminal prosecution does not mean that a parolee is not entitled to due process; termination of parole "calls for some orderly process, however informal." Morrissey, 408 U.S. at 482. Due process, however, "is flexible and calls for such procedural protections as the particular situation demands." Id. at 481. The Morrissey Court described the process due in a parole hearing, including a preliminary probable cause

22

hearing before an independent hearing officer (and notice to the parolee of that hearing) and a final revocation hearing at which the parolee has the opportunity to be heard. Id. at 485-89. The process includes the "right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." Id. at 489.

The Seventh Circuit[3] has interpreted that parenthetical phrase—"unless the hearing officer specifically finds good cause for not allowing confrontation"—as permitting "the admission of *reliable* hearsay at revocation hearings without a specific showing of good cause." United States v. Mosley, 759 F.3d 664, 667 (7th Cir. 2014) (quoting Kelley, 446 F.3d at 692); see also Schmanke, 207 F. App'x at 658 (7th Cir. 2006) (citing Kelley, 446 F.3d at 692; United States v. Pratt, 52 F.3d 671, 675 (7th Cir. 1995)). "Hearsay is reliable if it 'bears substantial guarantees of trust-worthiness.'" Mosley, 759 F.3d at 667 (quoting Kelley, 446 F.3d at 692). The Seventh Circuit "essentially treats a finding of 'substantial trustworthiness' as the equivalent of a good cause

---

[3] The petitioner relies heavily on Simpson, a 2001 Wisconsin Court of Appeals case which held that an ALJ could not avoid making a good cause finding by determining that other evidence is reliable. 250 Wis.2d at 224-25. On *habeas* review, this court determines whether the Court of Appeals unreasonably applied clearly established *federal* law. At the time the Wisconsin Court of Appeals decided Simpson, "neither the U.S. nor the Wisconsin Supreme Court" had provided guidance regarding the consequences of an ALJ's failure to make a specific finding of good cause. Id. at 224. Since then, the Seventh Circuit has done so. Further, the Simpson court held that an ALJ's failure to make a specific good cause finding was subject to harmless error analysis, and concluded that "the failure to make a specific finding of good cause is harmless where good cause exists, its basis is found in the record, and its finding is implicit in the ALJ's ruling." Id. at 225 (citations omitted).

finding for the admission of hearsay." Id. (quoting Kelley, 446 F.3d at 692). "If the record so establishes, the admission of hearsay will 'not undermine the fundamental fairness of [a defendant's] revocation hearing and [will] not violate his right to due process.'" Id. (quoting Kelley, 446 F.3d at 693).

> The Wisconsin Court of Appeals reviewed the petitioner's assertion that
>
> > his counsel should have objected on procedural due process grounds to [the petitioner's] inability to confront and cross-examine the victim and the male victim and the ALJ's failure to find "good cause" for their lack of appearance. *See* **Simpson**, 250 Wis. 2d 214, ¶12 (quoting **Morrissey v. Brewer**, 408 U.S. 471, 489 (1972) (holding that at a revocation hearing, a probationer or parolee has "the right to confront and cross-examine adverse witnesses (unless the hearing examiner finds good cause for not allowing confrontation)")).

Dkt. No. 30-5 at ¶25.

Regarding male victim C.J., the Court of Appeals noted that "the ALJ's four-page decision makes only a one-sentence reference, based upon the officer's report, to any statement by him." Id. at ¶26. The court found that statement "corroborative of, and indeed largely cumulative to, a verbal statement [K.V.] provided the officer on August 4, as recorded in the officer's report, and [C.J.'s] August 8 written statement, both of which indicate [K.V.] asked [C.J.] to come over to her apartment because she was afraid of [the petitioner] and that [the petitioner] and the [C.J.] were fighting." Id. at ¶26. According to the Court of Appeals, "[t]he only addition of consequence from [C.J.'s] statement is that [the petitioner] clearly was the aggressor and 'attacked' [C.J.], which addition is consistent with [K.V.'s] seemingly excited ('hysterical') utterance to dispatch on August 4 that 'her ex-boyfriend, [the

24

petitioner], was attacking her friend and that there was a knife involved.'" Id.
The court saw no basis to conclude that the ALJ would not have revoked the
petitioner's supervision had the ALJ not considered C.J.'s statement, reasoning
that the ALJ found the petitioner's written statement incredible, and the
petitioner's "violent abuse of [K.V.] clearly appeared to weigh most heavily in
the ALJ's revocation and reconfinement decision, as the bulk of the ALJ's
decision focuses on [the petitioner's] harm to and terrorizing of her." Id.

Turning to good cause, the court observed that under Simpson, "an ALJ
may implicitly find good cause by finding that the evidence at issue is reliable."
Id. at ¶27 (citing Simpson, 250 Wis. 2d at ¶22 n.5). It found that in Simpson,
"the good cause requirement is 'always' satisfied 'when the evidence offered in
lieu of an adverse witness's live testimony would be admissible' under one of
the Wisconsin Rules of Evidence, such as Wis. Stat. § 908.03." Id. (citing
Simpson, 250 Wis. 2d at ¶30). The court concluded that the ALJ "satisfied the
good cause requirement by implicitly finding the evidence against [the
petitioner] to be reliable and trustworthy." Id. It reasoned that the ALJ
determined that Officer Meilahn's personal observation of K.V.'s facial scarring
and what she read in the medical records corroborated K.V.'s statements
during the August 4, 2013 interview about the petitioner attacking her. Id. The
court recalled that "the ALJ found believable [Officer Meilahn's] corroborative
testimony of observing [K.V.'s] extreme fear of [the petitioner] on August 4." Id.
And the court did "not believe there [was] a reasonable probability that had
counsel objected to the victim's lack of appearance, the ALJ would not have

explicitly stated a finding of good cause based upon the reliability of the evidence." Id. at ¶27.

The Court of Appeals' conclusion falls within the bounds of reasonableness as §2254(d) requires. Under Seventh Circuit law, Morrissey does not require an ALJ to make an explicit good cause determination to admit reliable hearsay, and the cases the petitioner cites to the contrary are from other circuits. See Dkt. No. 46 at 11. The petitioner's argument that some kind of balancing approach is required also relies on cases from other circuits. Id. at 11-12. If the relevant hearsay evidence was reliable, it would have been futile for the petitioner's lawyer to object to the lack of an explicit good cause determination. A failure to raise a losing argument or motion does not constitute ineffective assistance. Perez v. U.S., 286 F. Appx. 328 (7th Cir. 2008) (citing Whitehead v. Cowan, 263 F.3d 708, 731 (7th Cir. 2001); United States v. Jackson, 103 F.3d 561, 575 (7th Cir. 1996)).

### 2. *Unreasonable determination of the facts*

Next, the petitioner challenges the reliability of the hearsay evidence, asserting that both the ALJ and Court of Appeals rendered decisions based on an unreasonable determination of the facts in light of the evidence presented. Dkt. No. 46 at 14-17. He states that the Court of Appeals' finding "'that the officer's personal observation of scarring on the victim's face and what the officer read in the hospital medical records corroborated the victim's hearsay statements to the police officer and agent about [the petitioner] attacking her' is an unreasonable determination of the facts in light of the evidence and does

26

not support the fact that the ALJ satisfied the good cause requirement by implicitly finding the evidence to be reliable and trustworthy." Id. at 15.

The petitioner maintains that K.V.'s medical records regarding the injuries she suffered several weeks earlier indicate that she told the attending physician at that time that her injuries resulted from getting hit by a softball and falling down stairs. Id. He stresses that in one medical report, K.V. "denied any domestic violence or other concerns." Id. According to the petitioner, "the hospital records directly contradict KV's hearsay statements to the officer and agent that [the petitioner] attacked her." Id. at 16. He argues that "[t]he hospital records do not corroborate KV's hearsay statement or support the ALJ's implicit good cause requirement that the evidence used against [the petitioner] was either reliable or trustworthy." Id. In the petitioner's opinion, the ALJ should have credited K.V.'s statements indicating her injuries resulted from getting hit by a softball and falling down stairs because "KV was alone and in a safe place when she received medical care. Therefore, there was no reason for her to lie to medical personnel." Id. at 17.

The respondent asserts that the court should not consider this argument "because it is an attempt at advancing a dismissed claim." Dkt. No. 47 at 13. The respondent stresses that "[the petitioner] was only allowed to proceed on his two ineffective assistance of counsel claims." Id.

Again, the petitioner waited until his reply brief to explain how this argument related to ineffective assistance of counsel. In his reply brief, the petitioner asserts that the most serious allegation against him was that he'd

assaulted the victim four weeks earlier and that the incident resulted in eleven stitches. Dkt. No. 48 at 5. The petitioner says that it was only after August 4, 2013 that the victim reported that it was the petitioner who'd caused those injuries. Id. He claims that the other alleged release violations were not serious enough to warrant a revocation sentence of five years and says that if his attorney had objected "to the fact that the victim's hearsay statement about [the petitioner beating her was contradicted by the medical records, it is possible [the petitioner] would not have been revoked for 5 years." Id. at 5-6.

A decision involves an unreasonable determination of the facts under §2254(d)(2) "if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." Taylor v. Grounds, 721 F.3d 809, 817 (7th Cir. 2013) (quoting Goudy v. Basinger, 604 F.3d 394, 399-400 (7th Cir. 2010)). "A state court's factual determinations are presumed correct, and the petitioner must rebut that presumption by clear and convincing evidence." Cal v. Garnett, 991 F.3d 843, 848-49 (7th Cir. 2021).

The Court of Appeals found that "the hearsay evidence related to [the petitioner's] abuse of [K.V.], including statements by [K.V.] and medical reports detailing the specific injuries she sustained, was corroborated by the officer's testimony at the revocation hearing as to the officer's personal observance on August 4 of injury/scarring to [K.V.'s] face." Dkt. No. 30-5 at ¶22. It concluded that Officer Meilahn's testimony as to K.V.'s demeanor on August 4, 2013 "further corroborate[d] the hearsay evidence of the medical records, police report, and [K.V.'s] statement, as does the officer's testimony that she received

28

a medical release from [K.V.] in order to gain access to [K.V.'s] medical records." Id. Noting that the petitioner "also appear[ed] to complain that his counsel was ineffective for not objecting to the officer's testimony related to the medical records because a copy of the records was not provided to either the ALJ or to [the petitioner]," the court again saw no reasonable probability of a different outcome. Id. at ¶23-24. It reasoned that while the petitioner believed the records indicated that K.V.'s injuries resulted from falling down the stairs or "being hit in the face with a softball," the Court of Appeals "seriously doubt[ed] that had the medical records themselves been admitted . . ., the ALJ would have believed stairs and a softball were the actual causes." Id. at ¶24.

The petitioner disagrees with the Court of Appeals' evaluation or interpretation of the evidence. The petitioner has not demonstrated that the Court of Appeals' determination resulted from fact-finding that ignored the clear and convincing weight of the evidence. He has not rebutted by clear and convincing evidence the presumption that the Court of Appeals' factual determinations are correct. And he has not explained why it was unreasonable for the Court of Appeals to look askance at the victim's inconsistent claims to medical providers—that her injuries resulted from being hit by a softball, then from falling down stairs—in light of her statements to, and demeanor with, Officer Meilahn.

3.    *Strickland*

The petitioner argues that the Court of Appeals unreasonably applied Strickland. Dkt. No. 46 at 17. He "posits he was prejudiced by Attorney

29

Romanowich's performance because he was deprived of a fair proceeding," reasoning that "counsel failed to object to KV's hearsay statements which were contradicted by the medical records." Id. The petitioner again stresses that medical records indicate K.V. initially denied domestic abuse and claimed her injuries resulted from being hit by a softball and falling down stairs. Id. at 17-18. He contends that "[c]ounsel should have objected that KV's hearsay statements to the officer and agent were inadmissible under Wis. Stat. 908.03(24) because they had no circumstantial guarantees of trustworthiness comparable to the hearsay exceptions in Wis. Stat. 908.03(4)(6m)(24)." Id. at 18.

According to the respondent, the Court of Appeals correctly applied Strickland. Dkt. No. 47 at 13-14. He reasons that "[a]s the Wisconsin Court of Appeals correctly explained, [the petitioner] needed to show a 'reasonable probability' that, but for the alleged constitutional deficiencies, the result of the revocation hearing would have been different." Id. at 14. The respondent argues that "[r]eliability is no longer part of the prejudice analysis, and fairness is a relevant consideration only in unusual types of situations not present here." Id. at 15 (citing Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006); Washington v. Smith, 219 F.3d 620, 632 (7th Cir. 2000)).

When it rejected the petitioner's ineffective assistance of counsel claims, the Court of Appeals concluded that the petitioner "fail[ed] to demonstrate prejudice—here, a reasonable probability the ALJ would have sustained the objections he claims counsel should have made as well as a reasonable

30

probability sustaining those objections would have resulted in a different outcome." Dkt. No. 39-5 at ¶15. The court found the petitioner's appeal "doomed" solely due to the lack of an explanation as to how Attorney Romanowich's failure to object prejudiced him. Id. (collecting cases). Nonetheless, under its "own independent review of the record," the court determined that the petitioner "would be hard pressed to make a showing of prejudice." Id. at ¶16. The court reasoned that the petitioner stipulated to one of the alleged violations—consuming alcohol; it stated that "even a single violation provides a sufficient ground for revocation." Id. (citing State ex rel. Warren v. Schwarz, 211 Wis. 2d 710, 724 (Wis. Ct. App. 1997)). According to the Court of Appeals, even if Attorney Romanowich had made the objections that the petitioner suggested she should have, "such objections would not have aided his case." Id. The court reasoned that hearsay is admissible in a revocation hearing. Id. at ¶17 (citing Simpson, 250 Wis. 2d at ¶30 n.6).

Further, the court observed that "fairly early in the hearing, when the officer began to testify as to [K.V.'s] medical information on which the officer had been 'briefed,' counsel did object on the basis that such testimony was 'double hearsay.'" Id. (emphasis in original). It recounted the ALJ's decision to overrule that objection despite Attorney Romanowich's arguments that "the officer had 'no firsthand knowledge of' the medical information, 'that kind of hearsay is not the type of hearsay that is allowed at a hearing like this,' and the ALJ should 'not allow the Officer to testify to that kind of information.'" Id. The court observed that "[t]he officer then testified that she actually viewed the

31

medical records herself and testified as to what she viewed in those records."
Id. Observing the ALJ's response to Attorney Romanowich's objection, the
Court of Appeals saw "no reason to believe it [was] reasonably probable that
had counsel subsequently objected to the officer's or agent's testimony as to
directly reviewing the medical records, or objected to admission of the police
reports, the ALJ would have sustained the objection and prevented the
admission of the evidence." Id. The court saw "no basis other than speculation
for concluding [the petitioner] was prejudiced by his counsel's failure to make
the objections he claims she should have made, and speculation will not
sustain an ineffective assistance of counsel claim." Id. at ¶28 (citing State v.
O'Brien, 214 Wis. 2d 328, 349-50 (Wis. Ct. App. 1997)).

The petitioner's conclusory arguments that had Romanowich objected to
the alleged unreliability of the victim's statements, things might have gone
differently is not sufficient to prove prejudice under Strickland. "The likelihood
of a different result must be substantial, not just conceivable." Harrington, 562
U.S. 86, 112 (2011) (citing Strickland, 466 U.S. at 693). The petitioner does not
explain why he believes that the ALJ would have sustained an objection had
Romanowich made it. The Court of Appeals itself noted that even if
Romanowich had objected to the victim's statements on hearsay grounds, "the
ALJ had no hesitations about admitting other hearsay evidence at the hearing."
Dkt. No. 30-5 at ¶24. The appellate court also noted that during her interview
with Meilahn, the victim stated—while she was visibly upset, jumpy, fearful
and sometimes crying—that the petitioner had attacked her and attempted to

32

kill her "at three separate occasions, at least within the last year, the most recent being about three weeks prior to" August 4, 2013. Id. The appellate court observed that these statements "also appear to satisfy the excited utterance exception to the hearsay rule." Id. (citing in n.7 Wis. Stat. §908.03(2)).

The Court of Appeals did not unreasonably apply federal law when it concluded that the petitioner could not demonstrate prejudice under Strickland, even if it was deficient performance for counsel to fail to object (and the court did not find that counsel's performance was deficient). Because the petitioner has not demonstrated that the hearsay evidence was unreliable, or that Attorney Romanowich performed ineffectively by failing to object to their admission, the court will dismiss the petition and dismiss the case.

## III.    Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of

33

appealability, because reasonable jurists could not debate the court's decision to deny the petition on the merits.

## IV. Conclusion

The court **DISMISSES** the petition for writ of *habeas corpus*. Dkt. No. 1.

The court **DECLINES TO ISSUE** a certificate of appealability.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**.

The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 18th day of October, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**